UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL BARAD,

Plaintiff,

v.

**Hon. Hugh B. Scott**

03CV736

(CONSENT)

PETER COMSTOCK,

**Order**

Defendant.

Before the Court is defendant's motion for summary judgment (Docket No. 23), as well

as defendant's motion to preclude admission of certain testimony as an expert (Docket No. 40).

The parties consented to proceed before the undersigned as Magistrate Judge (Docket No. 21,

Dec. 9, 2004).

BACKGROUND

Plaintiff was an inmate in the Gowanda Correctional Facility ("Gowanda") during the

relevant events alleged.  He commenced this 42 U.S.C. § 1983 action on September 30, 2003

(Docket No. 1) against the superintendent of Gowanda and several prison employees and the

Commissioner of Corrections, alleging that he was not treated by Gowanda medical staff for

kidney stones and other ailments during Memorial Day weekend of 1999, in violation of his

Eighth Amendment rights against cruel and unusual punishment.

On May 29, 1999, at approximately 3:45 am, plaintiff was brought to Gowanda's Health

Services for evaluation of complaints that he was having a kidney stone attack for the past three

days.  (Docket No. 25, Def. Statement ¶ 11; Docket No. 26, Comstock Decl. ¶ 5; cf. Docket

No. 32, Pl. Statement ¶ 11 (denying defendant's statement on this point, but admitting that he

sought emergency treatment for attacks he suffered for three days prior).)  Plaintiff's medical

chart noted that he experienced pain for the prior three days, had passed out three times and was

vomiting in the last twenty-four hours (Docket No. 26, Comstock Decl. ¶ 5; Docket No. 25, Def.

Statement ¶ 12; cf. Docket No. 32, Pl. Statement ¶ 12 (denying defendant on this point[1])).

Defendant contends that plaintiff did not vomit while he was in the medical unit (Docket No. 26,

Comstock Decl. ¶ 5), but plaintiff disputes defendant's personal knowledge of the operative

events that occurred in that unit, since he testified in his deposition that he was relying upon a

review of plaintiff's medical records only (Docket No. 32, Pl. Statement ¶ 13; Docket No. 33, Pl.

Atty. Decl., Ex. E, Comstock EBT Tr. at 53-54, 59 (defendant did not recall events of May 29,

1999, without reviewing the medical record)).  Plaintiff's medical record indicated that he

complained that he could not keep medication down and his urine was clear although he

complained of burning while urinating (Docket No. 25, Def. Statement ¶ 14; cf. Docket No. 32,

Pl. Statement ¶ 14 (denying the operative events but admitted that medical record contained that

notation)).  According to plaintiff's chart, his urine was strained and no stones were found

(Docket No. 25, Def. Statement ¶ 15).  Defendant believed that plaintiff suffered a kidney stone

attack (id. ¶ 23; see id. ¶ 25), but that the condition was not life threatening (id. ¶ 24; cf. Docket

No. 32, Pl. Statement ¶ 24 (denying this statement)).

Defendant was the only medical staff on duty at Gowanda that night.  He called Susan

Kruse, the on-call physician's assistant, who advised that plaintiff be given two Tylenol with

---

[1]Plaintiff's counter Statement of Material Facts disputes proof of many of the operative
events stated in defendant's Statement, but admits to these events being stated in plaintiff's
medical records.  See Docket No. 32, Pl. Statement ¶¶ 13-20.

codeine and ice chips.  (Docket No. 25, Def. Statement ¶¶ 18-20.)  Plaintiff was given a slip to

see a physician on June 1, 1999 (id. ¶ 21; see Docket No. 32, Pl. Statement ¶ 21 (admitting this

statement)).  Defendant argues that he followed Gowanda procedure and treated plaintiff in the

manner he believed was sufficient and effective and in accordance with the physician's assistant

direction (Docket No. 25, Def. Statement ¶ 22).

Plaintiff contends that defendant was aware of plaintiff's history of kidney stones (Docket

No. 32, Pl. Counterstatement ¶ 1[2], at third unnumbered page).  Defendant diagnosed plaintiff as

having suffered kidney stones on May 29, 1999, but failed to treat it as an emergency medical

situation (id. Pl. Counterstatement ¶¶ 2-3).  Defendant never took plaintiff's vital signs or sought

to contact the facility doctor or have plaintiff examined by Kruse (id. Pl. Counterstatement ¶¶ 4-

6).  According to plaintiff, defendant never prescribed any pain killers (id. Pl. Counterstatement

¶ 7).  Defendant laughed in plaintiff's face and told him not to return to the infirmary until his

June 1 appointment date (three days later), telling the guards that plaintiff had a "false alarm" and

should not see a doctor until June 1 (id. Pl. Counterstatement ¶¶ 8-9).  Plaintiff alleges that he

had a "near-death experience," lost consciousness, suffered septic shock and system failure (id.

Pl. Counterstatement ¶ 12; Docket No. 30, [Pl.][3] Aff. ¶ 10).  Plaintiff returned to the infirmary

later that morning on May 29, when a new nurse was on duty and was rushed to a hospital

---

[2]"Counterstatement" refers to that portion of plaintiff's Docket No. 32 that contains the Counter Statement of Disputed Material Facts.

[3]The actual title of this paper is "Affidavit of Defendant."  Plaintiff filed an Amended Affidavit, Docket No. 38, correcting earlier filed versions of plaintiff's affidavit, Docket Nos. 30, 35.

(Docket No. 30, [Pl.] Aff. ¶ 10).  Plaintiff then was hospitalized for ten days and then in an

infirmary for seven more days (Docket No. 32, Pl. Counterstatement ¶ 14).

When plaintiff returned to Gowanda and saw a doctor, he complained about the handling

of the medical emergency.  He was told that the fourteen days he had to file a grievance had

expired.  (Docket No. 30, [Pl.] Aff. ¶ 11; Docket No. 32, Pl. Counterstatement ¶ 15.)  He also

feared retaliation, from prior experiences commencing grievances against medical personnel

(Docket No. 33, Pl. Atty. Decl. Ex. D, Pl. EBT Tr. at 60; Docket No. 32, Pl. Counterstatement

¶¶ 17-18).

*Pleadings, Proceedings and the Pending Motion*

Plaintiff's Complaint alleged eight causes of action (Docket No. 1).  On June 4, 2004,

defendants' motion to dismiss was granted except for the Eighth Amendment claim against

defendant Peter Comstock, a nurse at Gowanda.  (Docket No. 12, at 10.)  Defendant had argued

that claims against him were time barred, but the Court rejected that argument. (Id. at 4-7, 7.)

Defendant answered on June 24, 2004 (Docket No. 13).

After consenting to proceed before the undersigned (Docket No. 21), defendant filed the

pending motion (Docket No. 23)[4].  The briefing schedule for this motion required responses to

the motion by May 16, 2005, and reply (as extended, see Docket No. 36) by June 27, 2005, with

the motion deemed submitted as of June 27 (Docket Nos. 28, 36 (extending reply deadline)).

That order also required the parties to address the issue of exhaustion under the Prison Litigation

Reform Act, as recently construed by the United States Court of Appeals for the Second Circuit

---

[4]Defendant submitted in support of his motion a memorandum of law (Docket No. 24), his declaration (Docket No. 26) and defense counsel's declaration (Docket No. 27), each with exhibits, and a statement of material facts (Docket No. 25).

(id.).  Plaintiff responded on May 14, 2005.  (Docket Nos. 29 (Aff. of Claire Conti, R.N.), 30 (Pl.

Aff.), 33 (Pl. Atty. Aff., with exhibits), 32 (Rule 56.1 Statement, and Counter Statement), 31

(memorandum of law); cf. Docket No. 38, Pl. Amended Aff. (filed June 16, 2005)).  Plaintiff

produced an affidavit from an emergency room nurse who, after reviewing plaintiff's Gowanda

medical records, opined that plaintiff's situation constituted a medical emergency (Docket

No. 29, Conti Aff.).  Defendant argues in reply that plaintiff fails to establish that he is within the

Second Circuit's exception from the exhaustion doctrine required by the Prison Litigation

Reform Act.  On the merits, defendant concludes that plaintiff merely alleges a medical

negligence claim and not a deliberate indifference claim under the Eighth Amendment (Docket

No. 39, Def. Reply Memo.).  Defendant later moved to preclude the use of Conti as an expert

since she was never disclosed by plaintiff to be an expert in this case and (since she never treated

plaintiff) was not a fact witness (Docket Nos. 40, 41, June 27, 2005).

## DISCUSSION

I.      Summary Judgment Standard

        Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c).   The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact

exists.  In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.

Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co.
v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby,
477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must
demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986), the party against whom summary judgment is sought, however, "must do more than
simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving
party must come forward with specific facts showing that there is a genuine issue for trial."
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in
original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002);
Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

II.      Prison Litigation Reform Act Exhaustion Standard

        Defendant argues that plaintiff admitted that he failed to exhaust his administrative
remedies prior to commencing this action (Docket No. 25, Def. Statement ¶ 10; Docket No. 24,
Def. Memo. at 3-4).  In his answers to interrogatories, plaintiff admitted that he did not file a
grievance concerning the lack of medical treatment but instead "opted to redress the deprivation
by defendant of rights secured to Plaintiff by the United States Constitution in this Court."
(Docket No. 27, Def. Atty. Aff. ¶ 9, Ex. B, Pl. Ans. to Interrog. Ans. to No. 7.)   In reply,
defendant contends that administrative remedies were available to plaintiff, despite his
hospitalization (Docket No. 39, Def. Reply Memo. at 3-4).

        Plaintiff argues that there were no administrative remedies available to plaintiff to
alleviate his injuries.  (Docket No. 31, Pl. Memo. at 3-6.)  Alternatively, he contends that he had
special circumstances to excuse his not filing a grievance, namely that the state of the law in this

6

Circuit at that time did not require plaintiff to grieve this issue (id. at 9-10), that he suffered for more than fourteen days in a hospital and later confined in bed and could not physically have commenced a grievance (see id. at 8-9).  He argues that defendant should be estopped from raising the exhaustion defense, because the indifference to his medical condition constituted retaliation (see id. at 7-8).

A.      Prison Litigation Reform Act

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), states "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court found that "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  The PLRA was enacted to "reduce the quantity and improve the quality of prisoner suits" by giving prison officials the first opportunity to deal with inmate complaints by internal processes. Id. at 524-25.  The act's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court" id. at 528, and clarify the contours of the controversy once it is litigated, id. at 525.

Plaintiff has an obligation under the PLRA to exhaust "such remedies when Congress has specifically mandated that [she] do so." Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir. 2001)

("Giano I").[5]  Other courts have required plaintiffs to follow the proper channels to exhaust.

Mendoza v. Goord, No. 00 Civ. 0146, 2002 U.S. Dist. LEXIS 22573, at *8 (S.D.N.Y. Nov. 21,

2002).  The PLRA "applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

wrong."  Porter, supra, 534 U.S. at 532, rev'g, Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000).

  B.  Second Circuit Law of Exhaustion

  Exhaustion under the PLRA, however, is not jurisdictional in this Circuit, Richardson v.

Goord, 347 F.3d 431, 434 (2d Cir. 2003); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004).

It is an affirmative defense for defendants to assert, Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d

Cir. 1999); Ziemba, supra, 366 F.3d at 163, subject to certain defenses such as estoppel, Ziemba,

supra, 366 F.3d at 163; Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004) (defendants' threats

estopped non-exhaustion defense), and waiver, Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004).

  The Second Circuit recently held, on the issue of  whether the provision of the PLRA that

"***such administrative remedies as are available*** are exhausted," 42 U.S.C. § 1997e(a) (emphasis

added), that inmate plaintiffs could be excused from non-compliance with administrative

procedures or use alternative means to exhaust their administrative remedies from the three-tier

---

[5]In order to make the determination of whether an inmate has exhausted his administrative remedies, review of the process available to him is required.  Gowanda Correctional Facility, like similar facilities in New York, has a three-tier grievance procedure that consists of filing a grievance with the facility's Inmate Grievance Resolution Committee ("IGRC"); then an appeal to the superintendent; then an appeal of the superintendent's decision to the Central Office Review Committee ("CORC").  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7; see Harris v. Totten, 244 F. Supp.2d 229, 233 (S.D.N.Y. 2003).  The first step has the inmate filing an Inmate Grievance Complaint Form, 7 N.Y.C.R.R. § 701.7(a)(1), within fourteen days of the incident, N.Y. Corr. Law § 139.  The facility's IGRC then reviews the grievance and attempts to resolve it informally and, if resolved to the satisfaction of the grievant inmate, the resolution shall be entered on the grievance, within seven business days.  Id. § 701.7(a)(3).

grievance and appeal process now available from the DOCS, see Giano v. Goord, 380 F.3d 670 (2d Cir. 2004) ("Giano II") (special circumstances establish plaintiff's exhaustion); Hemphill, supra, 380 F.3d 680; Johnson, supra, 380 F.3d 691 (defendants waived PLRA exhaustion defense); Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004) (defendants' behavior sometime renders administrative remedies unavailable for exhaustion purposes, such as plaintiff prevailing in the grievance process but defendants not implementing the grant of the relief); Ortiz v. McBride, 380 F.3d 649 (2d Cir. 2004) ("Ortiz II") (total exhaustion not required for mix of exhausted and unexhausted claims).

Although not expressly part of the Second Circuit's three-step inquiry, these cases established an initial inquiry that the Court must make before beginning the three-step process, that is asking whether plaintiff "plausibly seeks to counter defendants' contention that the prisoner failed to exhaust available administrative remedies," Hemphill, supra, 380 F.3d at 686. If plaintiff has done this, this Court then is required to conduct the three-part inquiry. Id. First, the Court must ask whether administrative remedies existed, and if so whether defendants' actions rendered those remedies unavailable to plaintiff. Id.; Abney, supra, 380 F.3d 663. Second, the Court must consider whether defendants forfeited the affirmative defense of non-exhaustion either by waiving it or by interfering with plaintiff's efforts to exhaust. Johnson, supra, 380 F.3d 691; Ziemba, supra, 366 F.3d 161. Third, if the Court finds that administrative remedies were available to plaintiff and that defendants have not forfeited the non-exhaustion defense, then the Court must ask whether there exist "special circumstances" which justify plaintiff's failure to exhaust. Giano II supra, 380 F.3d 670; Rodriguez v. Westchester County

<u>Jail Correctional Dep't</u>, 372 F.3d 485 (2d Cir. 2004); <u>Berry v. Kerik</u>, 366 F.3d 85 (2d Cir. 2003).
(<u>See</u> Docket No. 48, Defs. Memo. at 3-4.)

The Second Circuit did not set forth what instances qualify as "special circumstances" but stated that courts must determine whether such circumstances exist "by looking at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." <u>Giano II</u>, <u>supra</u>, 380 F.3d at 678.  The Circuit Court considered whether "special circumstances" existed in these cases and found they exist upon an inmate's reasonable (if erroneous) interpretation of DOCS regulations, <u>Giano II</u>, <u>supra</u>, 380 F.3d at 689-91; <u>see</u> <u>Hemphill</u>, <u>supra</u>, 380 F.3d at 689-91 (remanded on question whether regulations were clear as to effect of writing directly to superintendent and whether threat of one defendant constitutes a special circumstance).  The Second Circuit also recognized an inmate's reliance upon the court's earlier construction of the law (even if later found to be erroneous) was a justifying "special circumstances."  <u>See</u> <u>Rodriguez</u>, <u>supra</u>, 372 F.3d at 487 (order denying rehearing), <u>cited in</u> <u>Giano II</u>, <u>supra</u>, 380 F.3d at 675; <u>cf.</u> <u>Berry</u>, <u>supra</u>, 366 F.3d at 87-88 (in absence of justification for not following administrative remedies, dismissal of inmate's action appropriate).

C.    Application of Second Circuit Standard

1.    Plaintiff Plausibly Counters Defense?

Plaintiff raises four reasons why he did not file a grievance or felt that he could not file a grievance.  As discussed below, these reasons are sufficiently plausible to counter the exhaustion defense.

2.      Were Administrative Remedies Available?

Plaintiff argues that there were no administrative remedies available to plaintiff to alleviate his injuries.  He contends that he died prior to being revived during the seven hours between his visit to the infirmary when defendant was on duty to his later visit.  (Docket No. 31, Pl. Memo. at 5, 6.)  He cites Cruz v. Jordan, 80 F. Supp. 2d 109, 126 (S.D.N.Y. 1999), where the inmate plaintiff was unconscious in the hospital and could not file a grievance.  The court in Cruz held that the grievance procedure only provided prospective relief and that no administrative relief was therefore available to that plaintiff, id. at 128, 127.  Under the Inmate Grievance Procedure, initial resolution would have taken up to seven working days, with additional thirty days for appeals, 7 N.Y.C.R.R. § 701.7(a), (b), (c).

Plaintiff sought immediate relief for his pain.  This is beyond the normal process for inmate grievances.  Further, as a factual matter, he received hospitalization and, when he returned to Gowanda and saw the facility doctor, plaintiff was no longer assigned to defendant for further medical care, essentially all the administrative relief he could have gained had he grieved.

3.      Has Defendant Forfeited the Exhaustion Defense?

A defendant's threats to an inmate plaintiff that inhibit the plaintiff from filing a grievance will estop that defendant from asserting the exhaustion defense.  Hemphill, supra, 380 F.3d at 689.

Plaintiff argues that, due to past retaliation, the current incident was in retaliation and thus defendant is estopped from raising the exhaustion defense.  Plaintiff, however, does not point to how this particular defendant retaliated against him for past incidents involving other medical

staff at Gowanda.  He does not claim that this defendant threatened him or otherwise blocked him from grieving his May 1999 treatment.

Plaintiff adds that the same Gowanda medical staff had advised him that his time to file a grievance had run.  Defendant now argues that the grievance policy includes the possibility of extension of the fourteen-day period for "mitigating circumstances."  7 N.Y.C.R.R. § 701.7(a)(1).

Plaintiff, however, fails to allege how this particular defendant (and not the medical staff in general) hindered him from grieving.  The estoppel test goes to a defendant's actions to hinder an inmate plaintiff from seeking redress, see Abney, supra, 380 F.3d at 667; Ziemba, supra, 366 F.3d at 163-64, making administrative relief in effect unavailable, see Hemphill, supra, 380 F.3d at 686, 688-89 (correctional officer defendant's threats to plaintiff estop claim of exhaustion defense), or defendant forfeits the defense by failing to raise it, see Johnson, supra, 380 F.3d 691, which is not the case here.  Plaintiff only alleges here that Gowanda medical staff misinformed him of his right to grieve.

Therefore, on the present record, defendant has not forfeited the exhaustion defense.

4.      Do "Special Circumstances" Exist Here to Excuse Plaintiff's Otherwise Noncompliance?

Plaintiff contends that he had special circumstances to excuse him from not filing a grievance, namely that the state of the law in this Circuit at that time did not require an inmate in his situation to grieve similar claims (Docket No. 31, Pl. Memo. at 9-10).  See Rodriguez, supra, 372 F.3d at 487 (plaintiff's prior, but ultimately, incorrect understanding of law was sufficient justification for not pursuing available remedy, quoting Berry, supra, 366 F.3d at 88).  The uncertainty was whether a grievance was required under Second Circuit law in 1999 for this type

of deliberate indifference claim, see Snider v. Dylag, 188 F.3d 51, 55 (2d Cir. 1999), decided

Aug. 23, 1999, where that court stated that "it is far from certain that the exhaustion requirement

of 42 U.S.C. § 1997e(a) applies to deliberate indifference claims in the context of the instant one,

under § 1983, where the relief requested is monetary and where the administrative appeal, even if

decided for the complainant, could not result in a monetary award."  Reliance upon Circuit

decisional law, later held to be incorrect, has been held to be sufficient justification for an inmate

(generally unlearned in the law) to not seek administrative relief.  Rodriguez, supra, 372 F.3d at

487.  Defendant argues that the Supreme Court's decision in Porter v. Nussle, 534 U.S. 516

(2002), must be given full retroactive effect (Docket No. 39, Def. Reply at 6).  But, as the

Circuit's case law indicates, the question here for special circumstances is not the actual state of

the law (or the retroactive application of new decisional law, see Lawrence v. Goord, 304 F.3d

198, 200 (2d Cir. 2002)), but the inmate's belief of what the law was when he should have

grieved the matter and whether that belief is reasonable.  See Rodriguez, supra, 372 F.3d at 487.

Alternatively, plaintiff argues that he suffered for more than fourteen days in a hospital

and later confined in bed and could not physically have commenced a grievance (Docket No. 31,

Pl. Memo. at 8-9).  He believed that this time and suffering was in retaliation for his prior

grievance regarding his medical treatment while at Gowanda and felt fear in filing yet another

grievance.  He believed that a grievance would jeopardize future care within Gowanda's medical

facility.  This is same as alleged above for estopping defendant from raising the exhaustion

defense, but the Second Circuit in Giano II, supra, 380 F.3d at 677 n.6, recognized that the same

facts may apply in multiple categories under that court's three-step test.  Defendant contends that

plaintiff testified that he was able to write during his hospitalization and being bedridden and

attended a program, thus he was physically able to file a grievance (Docket No. 39, Def. Memo. at 4).

With the third part of its test, the Second Circuit requires a factual inquiry into whether the circumstances "might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." Giano II, supra, 380 F.3d at 678. The Circuit Court held that a reasonable interpretation of grievance regulations or defendants' actions may constitute special circumstances, Hemphill, supra, 380 F.3d at 689; Giano II, supra, 380 F.3d at 678; see also Johnson, supra, 380 F.3d at 697 (confusing regulations basis for remand to see if federal inmate might have reasonably believed that he could raise his claim in the disciplinary proceeding). The case law since the Second Circuit decided Giano II and Hemphill has examined whether an inmate alleged the existence of special circumstances, see Leacock v. New York City Health & Hosp. Corp., No. 03 Civ. 5440, 2005 U.S. Dist. LEXIS 2991, at *21 (S.D.N.Y. Mar. 1, 2005) (finding no special circumstances alleged); see also Berry, supra, 366 F.3d at 88 (absence of any justification for plaintiff's failure to exhaust), or whether such circumstances did or did not exist to preclude requiring adherence to the letter of the facility's grievance processes, see Freeman v. Goord, No. 02 Civ. 9033, 2004 U.S. Dist. LEXIS 23873, at *9-10 (S.D.N.Y. Nov. 23, 2004). Here, plaintiff has alleged special circumstances (as discussed above).

District courts have found the existence of "special circumstances" from DOCS employees failing to pick up appeals papers from the inmates to allow the inmates to perfect review of their grievance, Perkins v. Obey, No. 00 Civ. 1691, 2005 U.S. Dist. LEXIS 2774, at *12 (S.D.N.Y. Feb  23, 2005); see Martinez v. Augustine, No. 02CV579, 2004 U.S. Dist. LEXIS 17972, at *10 (W.D.N.Y. Sept. 2, 2004) (Schroeder, Mag. J.) (issue of fact whether prison

employees impeded plaintiff in appealing grievance precluding summary judgment on exhaustion); Rivera v. Pataki, No. 04 Civ. 1286, 2005 U.S. Dist. LEXIS 2747 , at *41-42 (S.D.N.Y. Feb. 7, 2005) (prison officials told inmate plaintiff that nothing could be done at the facility level, held special circumstance)[6], or the inmate learned of the unconstitutional conduct after his time to file a grievance had run, see Borges v. Piatkowski, 337 F. Supp. 2d 424, 427 n.3 (W.D.N.Y. 2004) (Larimer, J.).

This Court recently rendered a Report & Recommendation that found special circumstances did not exist where the inmate there had confused two proceedings and believed that a disciplinary proceeding was also his grievance proceeding.  Eleby v. Simmons, No. 02CV636 (W.D.N.Y. Apr. 11, 2005) (Scott, Mag. J.), Docket No. 56, Report & Recommendation at 17, adopted, Docket No. 64 (Order adopting Report & Recommendation, June 24, 2005).

Plaintiff here established the existence of special circumstances.  First, Gowanda medical staff allegedly (and erroneously) told plaintiff that his time to commence a grievance had lapsed while he was hospitalized and bedridden.  Second, plaintiff relied upon Second Circuit law at that time which did not require exhaustion of administrative remedies for deliberate indifference claims.

---

[6]See also Sheils v. Fulton County, 14 A.D.3d 919, 921-22, 787 N.Y.S.2d 727, 730 (3d Dep't), appeal denied, __ N.Y.3d__, ___ N.Y.S.2d ___, 2005 N.Y. LEXIS 1152 (May 10, 2005), applying Giano II and holding that no special circumstances existed for not complying with grievance procedure on allegation of inmate not receiving updated rules and regulations, although inmate admitted that the rules were available to him.

5.      In Summary

As a result, plaintiff plausibly counters defendant's exhaustion defense.  Defendant is not

estopped from raising that defense, but plaintiff has established the existence of special

circumstances to excuse his compliance with the grievance process within Gowanda.  Thus,

plaintiff is deemed to have exhausted his administrative remedies and the Court next proceeds to

consider the merits of plaintiff's deliberate indifference claim and defendant's substantive

defenses thereto.

III.    Eighth Amendment Deliberate Indifference

A.      Standard

Plaintiff asserts a deliberate indifference claim under the Eighth Amendment, and as such

has the burden of proving that defendants acted with deliberate indifference to a serious medical

need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976).

The Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes

punishments that "involve the unnecessary and wanton infliction of pain."  Gregg v. Georgia,

428 U.S. 153, 173 (1976) (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.

1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The Eighth Amendment

applies to prison officials when they provide medical care to inmates.  Hathaway, supra, 37 F.3d

at 66; see Estelle, supra, 429 U.S. at 103.  "To establish an unconstitutional denial of medical

care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Hathaway,

supra, 37 F.3d at 66 (quoting Estelle, supra, 429 U.S. at 104).  Mere negligent treatment or

malpractice upon a prisoner, however, does not create an Eighth Amendment violation.  Corby v.

Conboy, 457 F.2d 251, 254 (2d Cir. 1972).

16

This claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind.  Hathaway, supra, 37 F.3d at 66.  "Sufficiently serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66).  Plaintiff needs to prove that defendants wantonly intended to cause him to suffer.  Wilson v. Seiter, supra, 501 U.S. at 302.

B.      Application

Plaintiff contends that there are material issues of fact to preclude granting defendant summary judgment (Docket No. 31, Pl. Memo. at 11-15).  Defendant replies that defendant at most, mis-diagnosed plaintiff and plaintiff merely alleges medical negligence and not a deliberate indifference claim under the Eighth Amendment (Docket No. 39, Def. Reply Memo. at 7).

At issue is whether plaintiff established a material issue of fact whether defendant was subjectively deliberately indifferent to plaintiff's medical condition.  This, in turn, focuses upon the treatment plaintiff received the early morning of May 29, 1999.  Defendant contends that he prescribed Tylenol with codeine to plaintiff (Docket No. 26, Comstock Decl. ¶ 7, Ex. B; Docket No. 25, Def. Statement ¶ 19) and plaintiff denies receiving any treatment from defendant (see Docket No. 32, Pl. Statement ¶¶ 13-19).  Defendant concluded that, while plaintiff was suffering from kidney stones, it was not life threatening.  Even if plaintiff's version of the facts was credited, and defendant did tell the correctional officers that plaintiff's early morning visit to the infirmary was a "false alarm," (Docket No. 30, [Pl.] Aff. ¶ 9, Ex. F) plaintiff later was allowed to return to the infirmary and was seen by the day shift nurse.

On the objective element, plaintiff suffered kidney stone pain (that defendant was on notice about) from 3:45 am to about 10:00 am, when plaintiff returned to the infirmary.  Plaintiff now contends that he was near death (Docket No. 29, Conti Aff. ¶ 7; Docket No. 30, [Pl.] Aff. ¶ 10, Ex. G), with counsel arguing that he had died (Docket No. 31, Pl. Memo. at 5) before being revived.  He produces an affidavit from a nurse who, after reviewing his medical records, concludes that plaintiff was in an emergency situation on May 29 that defendant inadequately treated.  (See Docket No. 29, Conti Aff.)  At most, plaintiff raises a material issue of fact as to whether he suffered a sufficiently serious deprivation.

On the subjective element, "Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates.  Moreover, courts have repeatedly held that a prisoner does not have the right to the treatment of his choice. . . . [The] mere disagreement with prison medical personnel concerning the appropriate course of treatment and level of care that he should receive."  Ross v. Kelly, 784 F. Supp. 35, 44-45 (W.D.N.Y.) (Larimer, J.) (citations omitted), aff'd without opinion, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).  At best, plaintiff alleges defendant's negligence in releasing plaintiff from the infirmary without further treatment and allowing such treatment to be delayed by seven hours until the next shift started.  He alleges that defendant laughed at him and told the guards that it was a "false alarm" but plaintiff has not established that defendant wantonly intended to cause plaintiff to suffer to establish the subjective element of the deliberate indifference claim.

Therefore, defendant's motion for summary judgment is **granted** on the ground that plaintiff has not established subjective element of his deliberate indifference claim.

C.      Qualified Immunity

Alternatively, plaintiff argues that defendant is not entitled to qualified immunity, since

defendant was personally involved in the conduct alleged and it was not objectively reasonable

for defendant to believe his conduct to plaintiff did not violate plaintiff's rights (Docket No. 31,

Pl. Memo. at 15).  Defendant argues that his treatment of plaintiff was reasonable and thus

defendant is entitled to qualified immunity.

Given the disposition on the merits, the Court need not reach this alternative ground of

qualified immunity.

<u>CONCLUSION</u>

For the reasons stated above, while plaintiff (due to special circumstances) is deemed to

have exhausted his administrative remedies prior to commencing this action, defendant's motion

for summary judgment (Docket No. 23) is **granted** on the merits.  Defendant's motion to

preclude Nurse Conti as an expert witness (Docket No. 40) is **denied as moot**.  The Clerk of

Court is instructed to enter judgment consistent with this Order.

So Ordered.

s/HBS
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        June 30, 2005